932 F.2d 964
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ghulam Mohammed NASIM, Defendant-Appellant.
 No. 89-5438.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1990.
Decided May 6, 1991.
As Amended June 21, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CR-88-378-HM)
 Harry Levy, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, Md., for appellant.
 Jamie M. Bennett, Assistant United States Attorney, Baltimore, Md., for appellee; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED
 Before PHILLIPS, SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ghulam Nasim appeals from the judgment of the district court entered after a jury trial finding him guilty of a narcotics violation--possession with intent to distribute 100 grams or more of heroin, in violation of 18 U.S.C. Sec. 841(a)(1). Nasim contends that the trial court erred by refusing: a continuance to allow him to obtain medication, to permit him to testify concerning an exculpatory statement made by a principal government witness, to permit the withdrawal of trial counsel, and to appoint new counsel. Nasim also contends that there were omissions and misstatements in the trial transcript and that he was denied effective assistance of counsel. We affirm.
 
 
 2
 Nasim was indicted for the crimes underlying this appeal in November 1988. The acts constituting the offense, however, began in 1981. Nasim's then-friend, one Taquir Islam (later to be the principal government witness), in late 1981 took information to Nasim concerning the desire of one Sheid to sell multikilogram amounts of heroin to distribute in the Washington, D.C. area. Nasim and Islam conspired to re-contact Sheid but instead of buying his heroin to steal it from him. That plan was consummated. After preliminary contact, the two drove with Sheid to a park in Bethesda, Maryland, on the pretext of exchanging cash for the heroin, and, with the aid of a handgun, took the heroin from Sheid. Nasim and Islam eventually split the heroin. Both Nasim and Islam were convicted in April 1982 at which time Nasim commenced serving his sentence on that conviction. Islam was likewise convicted in 1982, was sentenced to a term of twenty years in prison and deported to his native Pakistan. In Karachi, Islam cooperated with the drug enforcement agents and eventually was allowed to return to the United States on the condition that he continue his cooperation with the DEA. It was information from Islam that resulted in the investigation concerning Nasim's "stashing" of his doubly illicit heroin obtained in 1982, and in his 1988 indictment and conviction.
 
 
 3
 According to the evidence introduced at trial through Islam, government agents, and bank authorities, Nasim rented a safe deposit box at the Mercantile Bank and Trust Company in the District of Columbia on December 31, 1981. The government obtained a search warrant as a result of information from Islam in 1988 and in the safe deposit box found 363.3 grams of heroin, said to have a retail street value of over $200,000. Also found in the box were $6,000 in cash and traveler's checks, jewelry, and tin foil.
 
 
 4
 At trial, the government produced evidence from a bank official, writing exemplars obtained from Nasim, correspondence from Nasim to the bank paying rent on the box over the years, writing samples from Nasim's prison file, and testimony from a handwriting expert testifying that the signatures on the application for the box and the entries into the box were Nasim's. It was also proved that there were no other entries into the box except those of Nasim--the last of which occurred in 1982 immediately prior to his incarceration. Islam testified that he and Nasim had robbed Sheid, that Nasim had suggested a safe deposit box was a good place to "stash" the heroin and that at one time he and Nasim had visited the neighborhood of the involved bank where Islam remained in an automobile while Nasim went into the bank and returned with $1,000 in cash to pay Islam for a loan.
 
 
 5
 At the beginning of trial, Nasim asked for a continuance because of the unavailability of medications he was taking. Defense counsel at that time advised the court that his client was able to communicate with him about the issues in the case, and the court denied the request for continuance finding that Nasim sounded "perfectly rational." The court also offered to assist Nasim in obtaining the necessary medications. After Islam's testimony, the court precluded Nasim's counsel from impeaching him on the basis of an exculpatory statement Islam had provided in 1982.[1] At the conclusion of the trial, the court denied Nasim's motion that he be appointed new trial counsel because he and his defense counsel "did not see eye-to-eye" on the filing of pretrial motions. After considering the briefs and oral arguments and reviewing the testimony, we are persuaded that the trial court committed no reversible error on these or other rulings, and accordingly, affirm its judgment.
 
 
 6
 AFFIRMED.
 
 
 
 [1]
 On the ground that Nasim possessed the alleged statement during the entire pre-trial proceedings, had not provided it to the government in accordance with a reciprocal discovery agreement, and was not exempt from required reciprocal information exchange under the provisions of Federal Rules of Criminal Procedure 16(b)(2)